AO 106 (Rev. 04/10) Application for a Search Warrant

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

## UNITED STATES DISTRICT COURT

for the

District of Utah

SEP 29 2017

BY D. MARK JONES, CLERK

DEPUTY CLERK

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

INFORMATION ASSOCIATED WITH THE SPRINT
CORPORATION CELLULAR ACCOUNT ASSIGNED
CALL NUMBER (801) 678-5841

)
)
)
)
)
)

Case No. 2:17 mj 495- DBP

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the _____ District of _____ Kansas _____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2113(a) | Bank Robbery |
| 18 USC 924(c)(1)(A) | Using, Carrying and Brandishing a Firearm During and in Relation to a Crime of Violence |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

DAVID C. ELKINGTON, SPECIAL AGENT, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/29/17

*Judge's signature*

City and state: Salt Lake City, Utah

DUSTIN B. PEAD, US MAGISTRATE JUDGE
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF UTAH

|  |  |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **(801) 678-5841,** THAT IS STORED AT PREMISES CONTROLLED BY **SPRINT CORPORATION.** | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, David C. Elkington, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     This search warrant request is an update of a prior search warrant submitted on July 27, 2017, and served on SPRINT on July 28, 2017. SPRINT advised a new warrant was needed to expand the scope of the original search warrant. The revised warrant is being expanded due to the development of new information.

2.     I make this affidavit in support of an application for a search warrant for information associated with a cellular telephone and cellular telephone account assigned call number (801) 678-5841 ("the SUBJECT PHONE") that is stored at premises controlled by SPRINT, a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require SPRINT to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3.     I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been so employed by the Federal Bureau of Investigation (FBI) since 1998. I am currently assigned to the Ogden office of the Salt Lake City Division of the FBI and I am tasked with investigating violent crimes, including bank robbery.  As a Special Agent with the FBI, I have participated in investigations involving violent crimes, drug trafficking organizations, counterterrorism, and crimes in the Indian Country. Through my experience in those respective investigative disciplines I have been involved the search, seizure and eventual analysis of electronically stored digital information from electronic storage devices, such as cellular telephones, computers, and removable storage media, as well as the obtaining of related information from supporting electronic infrastructures and service providers, such as cellular telephone companies, internet service providers, and other companies which provide online services via their internet sites or mobile applications. Through my investigative experience I know data is available from such providers and services, and is often of assistance in investigating all nature of criminal activity, including violations of Title 18, USC, Section 2113(a) - Bank Robbery, and 924(c)(1)(A) - Using, Carrying and Brandishing a Firearm During and in Relation to a Crime of Violence.

4.     The statements in this affidavit are based in part on information provided by law enforcement officers assigned to other law enforcement agencies, other Special Agents and employees of the FBI, and on my experience and background as a law enforcement officer and Task Force Officer of the FBI.  Since this affidavit is being submitted for the limited purpose of securing a warrant from the Court, your Affiant has not included each and every fact known to

me concerning this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.     The United States is investigating the armed bank robbery of the Goldenwest Credit Union, 131 West 200 North, Kaysville, Utah, on February 11, 2017, and the armed bank robbery of the Utah First Credit Union, 1173 N. Shepard Creek Parkway, Farmington, Utah, on March 29, 2017. The investigation concerns possible violations of 18 U.S.C. 2113(a) - Bank Robbery, and 924(c)(1)(A) - Using, Carrying and Brandishing a Firearm During and in Relation to a Crime of Violence.

6.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to search the information described in Attachment A for evidence of armed bank robbery, as further described in Attachment B.

## JURISDICTION

7.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." [18 U.S.C. § 2711(3)(A)(i).]

## PROBABLE CAUSE

8.     On Saturday, February 11, 2017, at approximately 8:26 AM, officers with the Kaysville Police Department, Kaysville, Utah, were dispatched to the Goldenwest Credit Union (GWCU), located at 131 West 200 North, Kaysville, Utah, on report of a bank robbery. Upon

their arrival, officers learned that at approximately 8:24 AM, two bank employees had arrived and entered the bank at a west-side door. As they entered the bank and the door was nearly shut, an unknown male entered the bank through the same door and confronted them at gun point. The bank employees described the handgun as being small and black. The male's face was completely concealed and he was wearing clothing which covered his entire body.

9.    At gun point, the male instructed the two employees to proceed to the bank vault. They complied with his command. He then instructed them to empty the contents of the vault into a backpack he supplied to them. They again complied with his demands, placing into the backpack a substantial amount of U.S. currency which was in the care and custody of the bank. When the bank employees had completed emptying the vault, the male took the bag and exited the bank through the same side door through which he had entered. He then fled the immediate area of the bank on foot.

10.    On Wednesday, March 29, 2017, at approximately 8:03 AM, officers with the Farmington Police Department, located in Farmington, Utah, were dispatched to the Utah First Credit Union (UFCU), 1173 N. Shepard Creek Parkway, Farmington, Utah on report of a bank robbery. Upon their arrival officers learned that at approximately 7:40 AM a bank employee with initials SI arrived at work. As she was unlocking the door to the building she was confronted at gun point by a male who had been hiding in the bushes near the side door. The male's face was concealed and he was wearing clothing which covered his entire body. SI described the handgun as being small and black.

11.    The male forced SI inside the bank and into the vault. SI told the male that—due to a time-based locking system—she would be unable to access the vault for another 15 minutes, and that even after that time she would need a second person with proper access rights. The male

4

told SI that he would wait until both conditions were satisfied. The male ordered SI to wait just outside the vault. She was instructed to surrender her phone and sit in silence while they waited.

12.     At approximately 8:00 AM, UFCU employee with initials KM arrived and entered the bank. She was immediately confronted by the armed male. KM did not have the rights to access the vault, and she so informed the suspect. The suspect abandoned his initial plan to access the vault and instead instructed both SI and KM to open their cash drawers and empty the drawers' contents into a bag. SI and KM complied, surrendering a substantial amount of U.S. currency which was in the care and custody of the credit union. Among the bundles of currency were two dye packs – both set to detonate upon exit from the bank building.

13.     The suspect fled the bank northbound on foot. A short time later the dye packs were activated and released a significant amount of red dye. The detonation apparently startled the suspect because he dropped and abandoned (a) the bag which carried the stolen currency, and (b) the firearm he had used to carry out the robbery. The bag, currency and firearm were located and recovered shortly after police arrival. The items were covered in the dye from the aforementioned dye packs. The suspect's gun was identified as a RUGER LC9, S/N: 452-39973, which is a small, black handgun.

14.     On March 29, 2017, a Bureau of Alcohol, Tobacco and Firearms (ATF) Special Agent (SA) queried the suspect handgun's serial number through the eTrace database. The results suggested that the Ruger handgun had been recently purchased by Kevin RASBAND from CABELA'S, 391 N. Cabela's Drive, Farmington, Utah. Investigation at CABELA's confirmed RASBAND as the purchaser, and that he purchased the Ruger handgun on February 8, 2017.

15.     On March 29, 2017, an FBI Task Force Officers (TFO) queried the Utah Criminal Justice Information System (UCJIS) database for RASBAND's driver's license and motor vehicle

5

information. He discovered RASBAND's listed address showed to 3163 N. Whitetail Drive, Layton, Utah.

16.     On March 29, 2017, an FBI Agent and TFO responded to RASBAND's listed address of 3163 N. Whitetail Drive, Layton, Utah, where they contacted Kirsten Rasband (KIRSTEN), who confirmed she was Kevin RASBAND's spouse and that they resided together. She further advised RASBAND was not at the residence because he was at work. The agents told KIRSTEN about the earlier bank robbery and that a firearm previously purchased by RASBAND had been recovered from the scene.

17.     KIRSTEN seemed surprised and acknowledged she had been trying to contact him via text messages and telephone calls all day. She advised that RASBAND left their residence a little before 7:00 AM that morning, somewhat earlier than usual, stating he had to be to work early because he had an important meeting with both the sheriff and auditing clerk of Davis County, Utah.

18.     KIRSTEN tried to call RASBAND at the request of investigators. The phone rang, but no one answered. KIRSTEN told investigators that her inability to reach RASBAND was out of the ordinary. At the time investigators spoke with KIRSTEN on the afternoon of March 29th, 2017, they had already learned that RASBAND had, in lieu of being terminated, resigned his employment as an internal auditor at Davis County government as of January 2017. They informed KIRSTEN of RASBAND's resignation and current employment status, i.e., he was unemployed. KIRSTEN advised she was unaware of the employment circumstance as RASBAND had been going to work every morning since his apparent resignation, then regularly arrived home at about 5:30 PM, as if he was coming home from work.

6

19.     KIRSTEN provided investigators with RASBAND's phone number of **(801) 678-5841**. She indicated the number was serviced through SPRINT. On March 29, 2017, an FBI TFO queried the number through Entersect (an intelligence database available online) and discovered the phone showed to one Kevin RASBAND of Whitetail Drive, Layton, UT. The Entersect search results confirmed the phone number belonged to SPRINT. KIRSTEN could not provide investigators with details about the make, model or operating program associated with RASBAND's telephone. She reported later, on March 31, 2017, that to her knowledge the referenced cellular telephone and telephone number were the only telephone and telephone number she knew RASBAND to have used in approximately the previous five years.

20.     On March 29, 2017 investigators obtained a state Court Order authorizing the receipt of Global Position System (GPS) location information transmitted by RASBAND's cellular telephone. The order was served and location information began delivery by SPRINT on March 29, 2017. The receipt of GPS location information served as evidence that the phone in question was on and being serviced by SPRINT on the day the UFCU robbery was committed. The information obtained was not retroactive and did not provide information about the device's location prior to service.

21.     On March 30, 2017, pursuant to a search warrant issued by the State of Utah, law enforcement officers from the Farmington Police Department conducted a search of a rental vehicle RASBAND had rented over the course of the previous 1½ weeks and was driving when he fled Utah on March 29, 2017, and on a green Jeep Wrangler Rubicon registered to RASBAND and located about a block from the Utah First Credit Union in Farmington, UT, on the morning of March 29, 2017. During the search of each vehicle, officers located, in each vehicle, handwritten notes which appear to be notes taken while RASBAND was casing unknown banks,

7

as the notes list apparent times of arrival at the respective observed locations, vehicle descriptions, person descriptions, the time of arrival of persons at the locations, and whether the observed persons had keys, presumably meaning keys to the bank doors. The dates of the activity and the location addresses are not included on the notes. Nevertheless, the presence of such material supports the allegation that RASBAND's bank robbery activity was premeditated and advanced preparations were being made.

22.     In July 2017, a GWCU employee who works at the Kaysville branch which was robbed on 02/11/2017, was reviewing bank surveillance video of other transactions RASBAND had made at the bank. On 08/29/2016 and 10/04/2016, RASBAND completed transactions at the branch during which time surveillance video recorded him driving an orange Subaru Sport Utility Vehicle. While the employee was reviewing the video, GWCU employee JW observed the orange SUV on the video screen and commented that the vehicle on the screen looked just like the vehicle that followed her home on two separate occasions from the bank during the previous September or October, 2016.

23.     During an interview on July 26, 2017, JW advised that on two evenings in a row in about September or October, 2016, upon departing the bank parking lot on her way home from work, an orange Subaru SUV with a "sporty" look and uniquely-styled wheels/hubcaps pulled out behind her as she drove west on 200 North toward northbound Interstate 15. The Subaru pulled behind her as it exited from the parking lot located directly to the north of the bank, on the north side of 200 North in Kaysville, Utah. On one of the evenings the SUV followed her all the way to the street on which her house is located. As she turned onto her street the SUV slowed, appearing as if the driver was trying to watch which driveway she would enter. Fearful that she

8

was being followed, she drove past her house, deciding not to turn into her driveway until the SUV was no longer watching her.

24.     On the second occasion, the orange Subaru SUV again followed JW as she left work in Kaysville, proceeded north on Interstate 15 to the Sunset, UT area, then followed her to her neighborhood. JW was then certain she was being intentionally followed by the orange SUV. On this occasion she drove past the street on which she resides, opting instead to drive around the block. The SUV did not follow her around the block. JW advised she is relatively familiar with the vehicles in her neighborhood but was certain she had never seen this vehicle before, particularly because the orange color was unique enough that she would have remembered it.

25.     JW could not see the license plate of the vehicle but described the driver as a 'younger' white male, though not a teenager, rather appearing to be in his mid-20s to mid-30s. He had dark hair. JW recalls the driver was possibly wearing a pair of glasses and maybe a hat. At the time, RASBAND was 30 years old; he has dark hair and wears glasses.

26.     Per the Utah Department of Motor Vehicles, a 2014 orange Subaru Crosstrek SUV bearing Utah plate X169TK is registered to KIRSTEN RASBAND.

27.     Information received previously from SPRINT indicated RASBAND's account had at least two different cellular handsets used with the account, though the telephone number did not change. One of the handsets was used during the time of the GWCU robbery in early February 2017, and the second handset was used during the time of the UFCU robbery in late March 2017. Activity such as attempting to switch out telephones is consistent with tactics employed by criminals to thwart investigators' use of cellular telephone derived information. The Electronic Serial Numbers of the two handsets used by RASBAND during the two respective bank robberies are 268435457800019448 and 270113180308194903.

28.     On May 3, 2017, a grand jury for the District of Utah returned an indictment on RASBAND charging him with the robbery of both credit unions and the brandishing of a gun during each incident.

29.     In my training and experience, I have learned that SPRINT is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

30.     Based on my training and experience, I know that SPRINT can collect cell-site data about the SUBJECT PHONE.  I also know that wireless providers such as SPRINT typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the approximate

location of a telephone, its user or users, and may assist in the identification of co-conspirators and/or victims.

      31.     Based on my training and experience, I know that wireless providers such as SPRINT, through their normal course of business, typically collect and retain information about their subscribers and additional authorized users listed on the subscriber accounts. This information may include, but is not necessarily limited to, personal information about the subscriber and authorized users, such as name and address, the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service, and the other cellular telephone numbers authorized to be used under the account. I also know that wireless providers such as SPRINT typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the subject phones' user or users, the additional authorized users under the subject's account, and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

32.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41. Further, I request that the Court direct SPRINT to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Finally, I request that, due the described apparent bank building and bank employee surveillance activity by Kevin Dean RASBAND over an apparent extended amount of time, SPRINT be directed to supply the information for the date range of September 1, 2016 – March 30, 2017.  Because the warrant will be served on SPRINT, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

DAVID C. ELKINGTON, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on ___9/28___, 2017

DUSTIN B. PEAD
United States Magistrate Judge

12

## <u>ATTACHMENT A</u>

### Property to Be Searched

This warrant applies to all records and information associated with the cellular telephone assigned call number **(801) 678-5841** ("the Account"), that are stored at premises controlled by **SPRINT** ("the Provider"), headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider, or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the **period of September 01, 2016 through March 30, 2017.**

    a.  The following information about the customers or subscribers of the account as well as ALL additional authorized users listed on the account or otherwise associated to the account, and ALL cellular telephone handsets used with or otherwise associated to the account, to include, but not limited to, cellular telephone handsets bearing Electronic Serial Numbers (ESN) 268435457800019448 and 270113180308194903:

        i.  Names and identification for ALL authorized users listed under the referenced account (including subscriber names, user names, and screen names);

        ii.  Addresses of ALL authorized users of the account (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long distance telephone connection records for ALL authorized users of the account;

2

iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions for ALL authorized users of the account;

v. Length of service (including start date) and types of service utilized for ALL authorized users of the account;

vi. For ALL authorized users of the account, the telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. For ALL authorized users of the account, other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. For ALL authorized users of the account, means and source of payment for such service (including any credit card or bank account numbers) and billing records

ix. Band numbers for all telephone equipment utilized by ALL authorized users of the account.

b. For ALL authorized users of the account, provide all records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account from **September 01, 2016 through March 30, 2017**, including:

i. The date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

ii. Information regarding the cell towers and sectors through which the communications were sent and received; and

3

iii.   Other precision location information such as PCMD (per call

measurement data).


**II.      Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of

Title 18 USC Section 2113(a) - Bank Robbery, and Title 18 USC Section – 924(c)(1)(A) - Using,

Carrying and Brandishing a Firearm During and in Relation to a Crime of Violence, involving

Kevin Dean RASBAND on February 11, 2017 and March 29, 2017.

4